UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY SCHULTZ and PATRICIA SCHULTZ,<br><br>                    Plaintiffs,<br><br>    v.<br><br>SAKAYE ICHIMOTO, *et al.*,<br><br>                    Defendants. | 1:08-CV-526-OWW-SMS<br><br>MEMORANDUM DECISION AND ORDER RE: MOTIONS FOR ATTORNEY'S FEES (Docs. 183, 187) |

I. <u>INTRODUCTION</u>.

Before the Court for decision are Defendants Sakaye Ichimoto's and William and Cinda Jamison's motions for attorneys' fees. (Docs. 183 & 187).  Plaintiffs Rodney and Patricia Schultz oppose the motions.  Plaintiffs argue that Defendants are not "prevailing parties" in this action since the Court did not adjudicate Plaintiff's complaint on its merits but, rather, dismissed the action for lack of subject matter jurisdiction.[1]

---

[1] Defendant Margaret Jamison separately moved for attorney's fees on May 14, 2010.  (Doc. 189.)  Ms. Jamison's motion for

1

1

## II. __BACKGROUND__.

2   **This action involves alleged environmental contamination**

3   **stemming from several dry cleaning establishments located near**

4   **Highway 41 in Oakhurst, California.   Plaintiffs, former**

5   **leaseholders of one of the properties,[2] filed suit against**

6   **Defendant owners/landlords to obtain contribution for costs**

7   **associated with the alleged environmental contamination.**

8   **Plaintiffs leased the property from Defendants in the 1980s and the**

9   **parties memorialized their landlord-tenant relationship in a Lease**

10  **Agreement, which terms provide the basis for Defendants' motions.[3]**

11  _____

12  attorney's fees is resolved by separate memorandum decision.

13
14      [2] The subject property is located at 40366 Highway 41, Oakhurst, California in the Eastern District of California.

15
16      [3] It is undisputed that Plaintiffs were assigned the leasehold interest in 1977 from George and Frances Wolfe and approved by the then-present owners, Mr. Alves and Ms. Williams.  Mr. Alves and Ms.
17  Williams sold the property to Margaret Jamison, John Jamison, William Jamison and Cinda Jamison in 1980.   Defendant Sakaye
18  Ichimoto and her late husband acquired a one-half interest in the property in 1982.

19
20  Defendants William and Cinda Jamison provide an undisputed summary of their relationship with Plaintiffs:

21
22      The Scultzs were tenants in real property owned by Jamisons, and on July 21, 1980, the Schultzs wrote to
23      Jamisons to notify Jamisons in writing that Schultzs were exercising their option to renew their then-
        existing lease for an additional five year after its
24      scheduled expiration on February 28, 1991, "as per paragraph 19" of that lease, so that the lease would
25      then continue in force at least through "the last day of February 1986.   It is this landlord-tenant
26      relationship on which the Schultzs relied on in order
27      to sue Jamisons.

28  (Doc. 184 at 7:13-7:20.)

**2**

On April 16, 2008, Plaintiffs commenced this action against Defendants Margaret Jamison, Sakaye Ichimoto, and William and Cinda Jamison to recover costs/damages resulting from environmental contamination of real property located in Oakhurst, California.[4] Plaintiffs pled eleven causes of action: (1) cost recovery under CERCLA § 107; (2) contribution under CERCLA § 113; (3) declaratory relief under CERCLA § 113; (4) contribution pursuant to California Health and Safety Code § 25363(e); (5) equitable indemnity and contribution; (6) continuing nuisance; (7) negligence; (8) trespass; (9) products liability; (10) declaratory relief; and (11) injunctive relief.

On March 1, 2009, Defendant M.B.L., Inc., moved to dismiss Plaintiffs' second cause of action on grounds that they lacked standing.[5] (Doc. 117.) Specifically, M.B.L., Inc. correctly argued that Plaintiffs' contribution claim was infirm because Plaintiffs were not subject to a § 106 administrative order or a § 107 cost-recovery action, prerequisites to recovery under § 113(f).[6] Plaintiffs' second cause of action was dismissed with

---

[4] Plaintiffs also named as Defendants a number of adjacent property owners, former leaseholders, dry cleaning operators, and manufacturers of dry cleaning products.

[5] Defendant M.B.L., Inc. is not a party to this motion and has not separately filed a motion for attorney's fees or motion for bill costs.

[6] Defendant Sakaye Ichimoto joined the motion on May 21, 2009. (Doc. 124.)

prejudice on September 16, 2009.[7]   (Doc. 138.)

On January 25, 2010, Defendants George and Frances Wolfe filed a motion for judgment on the pleadings or for summary judgment on Plaintiffs' first claim for cost recovery under CERCLA § 107, second claim for declaratory relief under CERCLA § 113, and fourth claim for relief under California Health and Safety Code § 25363(e).[8]   The Wolfe Defendants argued that Plaintiffs failed to comply with the statutory 60-day pre-litigation notice requirements under both federal and state law, either of which establish subject matter jurisdiction.   Defendants also requested that Plaintiffs' state law claims be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

Defendants Sakaye Ichimoto and William and Cinda Jamison joined the motion in February 2010.   Plaintiffs Rodney and Patricia Schultz filed a statement of non-opposition to the motion on March 8, 2010.   (Doc. 164.)

On March 18, 2010, the motion was granted.   (Doc. 166.) Plaintiffs' claims under CERCLA §§ 107, § 113, and California Health and Safety Code § 25363(e) were dismissed for lack of subject matter jurisdiction.   The state law claims were dismissed pursuant to 28 U.S.C. § 1367(c)(3).

On March 30, 2010, Defendants Sakaye Ichimoto and William and Cinda Jamison separately moved for attorney fees based on

---

[7] The September 16, 2009 Order provided: "The second cause of action stated in Plaintiffs' complaint is hereby dismissed with prejudice."   (Doc. 138 at 1:17-1:18.)

[8] Defendants George and Frances Wolfe are not a party to this motion and have not separately filed a motion for attorney's fees or bill of costs.

4

"prevailing party" status.[9]   (Docs. 183, 187.)   According to Defendants, they are entitled to attorneys' fees of $58,464.00 (Ichimoto) and $15,959.50 (William and Cinda Jamison), plus the amount of fees and costs incurred in drafting their motions for attorney's fees.

Plaintiffs filed a single opposition to the motions on June 28, 2010.  (Doc. 196.)

## III.  <u>DISCUSSION</u>.

### A.  *<u>Entitlement to Attorneys' Fees</u>*

Generally, litigants "are required to bear the expenses of their litigation unless a statute or private agreement provides otherwise."  *Carbonell v. I.N.S.*, 429 F.3d 894, 897-98 (9th Cir. 2005).  Here, Defendants request an award of attorney's fees based on Rule 54(d) and the terms of the parties' Lease Agreement.  In particular, Defendants rely on the Lease Agreement's attorney's fee provision, which provides:  "In the event of litigation concerning the terms of this lease or the use of premises, the Court may award to the prevailing party such attorney's fees as it may deem reasonable."  Defendants also rely on the Agreement's indemnity provision:  "Lessee(s) shall save the Lessors harmless from all claims, demands, actions and suits arising from the use and occupancy of the premises."

Defendants assert that having obtained a dismissal of Plaintiffs' second cause of action, with prejudice, and dismissal

---

[9] Defendants William and Cinda Jamison filed a single motion for attorney's fees on March 30, 2010.

of the nine remaining claims based on lack of jurisdiction, they are entitled to attorneys' fees as the "prevailing party" on the contract.   Defendants explain:

> [Defendants] can thus recover attorney's fees between [them] and the Schultzes if [they] are prevailing party in litigation concerning the use of the premises.   The lease contemplated that the use of premises would be a dry cleaning establishment.   The present case involves alleged pollution stemming from dry cleaning establishments in a close vicinity in the Oakhurst area [...] any alleged pollution that may or may not have occurred can reasonably be interpreted to arise from the use of the premises, which is what Schultzes allege throughout their complaint.   The complaint has since been dismissed, one claim being with prejudice [...] [Defendants] should now be entitled to attorneys fees as the prevailing part[ies].

(Doc. 197 at 5:23-6:4.)

Plaintiffs dispute Defendants' interpretation of "prevailing party" status.   According to Plaintiffs, there is no prevailing party when, as here, the action is dismissed for lack of subject matter jurisdiction.

The analysis begins with the definition of "prevailing party" set forth by the Supreme Court in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Res.*, 532 U.S. 598, 600 (2001); *see also P.N. v. Seattle Sch. Dist. No. 1*, 474 F.3d 1165, 1167 (9th Cir. 2007).   In *Buckhannon*, the Supreme Court noted that prevailing party status requires that a party "received a judgment on the merits, or obtained a court-ordered consent decree."   532 U.S. at 605 (citations omitted).   Additionally, such relief must "create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees."   Id. at 604.

Plaintiffs challenge only whether Defendants are "prevailing

6

parties" in this action, arguing that complaint was not adjudicated on its merits but, rather, dismissed the action for lack of subject matter jurisdiction.   In the Ninth Circuit, a defendant is not considered a "prevailing party" when dismissal is mandated by a lack of subject matter jurisdiction. *Miles v. State of Cal.*, 320 F.3d 986, 988 (9th Cir. 2003) (analyzing the term "prevailing party" with respect to civil rights claims). Therefore, attorneys' fees under Federal Rule of Civil Procedure 54(d) may not be awarded where an underlying claim is dismissed for lack of subject matter jurisdiction. *Id*.

Plaintiffs cite *Miles* and *Idea Place Corp. v. Fried*, 390 F. Supp. 2d 903 (N.D. Cal. 2005), to support their argument that Defendants lack "prevailing party" status.   In *Idea Place*, the defendants argued that they were entitled to attorney's fees because plaintiff's entire action was dismissed for lack of subject matter jurisdiction.   The defendants subsequently filed a motion for attorney's fees pursuant to California Civil Code § 1717.   The *Idea Place* court denied the motion because the defendants "ignored the express holding of *Miles*" and "were quite obviously not the prevailing party on the contract":

> [C]ontrary to Defendants' assertions, Defendants were quite obviously not the prevailing party on the contract.   Indeed, the Court's conclusion that subject matter jurisdiction was lacking expressly precluded the Court from making any findings with respect to the merits of the underlying action, including Plaintiff's breach of contract claim.   Compare Willis Corroon Corp. of Utah, Inc. v. United Capitol Ins. Co., 1998 WL 196472, 1998 U.S. Dist. LEXIS 5394 (N.D.Cal.1998) (granting motion to dismiss after reviewing the contract and determining that the filing of the complaint violated a 30-day "standstill" provision in the contract). Further, this Court's dismissal for lack of subject matter jurisdiction in federal court did not foreclose the possibility that Plaintiff could pursue

**7**

its contract claims in state court. Thus, it remains to be seen which entity is the "prevailing party" on Plaintiff's contract action.

*Id.* at 904-05.

Plaintiffs argue that the *Idea Place* decision, which they claim is analogous, defeats Defendants' motions for attorney's fees. Plaintiffs, however, overlook the fact that their CERCLA § 113(f) contribution claim was dismissed *with prejudice* on September 16, 2009, distinguishing this case from *Idea Place*. *See id.* at 904 ("On February 11, 2005, *the Court dismissed the action* due to lack of subject matter jurisdiction after finding that Plaintiff's complaint did not state a cause of action arising under federal law [...]") (emphasis added). Plaintiffs do not squarely address this difference, rather they assert that Defendants' motions are barred because "this court dismissed each claim for relief made relative to CERCLA, for lack of subject matter jurisdiction." That assertion misstates the record. (*Compare* Doc. 138 (September 16, 2009 Order dismissing Plaintiffs' CERCLA § 113 contribution claim *with prejudice*) (emphasis added) *with* Doc. 166 (March 18, 2010 Order dismissing Plaintiffs' claims for lack of subject matter jurisdiction). Contrary to Plaintiffs' arguments, the dismissal of the second claim with prejudice distinguishes this case from the *Miles* and *Idea Place* decisions.

Having established that Defendants are "prevailing parties"[10]

---

[10] Defendants correctly observe that dismissal of the second claim with prejudice "materially altered" the legal relationship between the parties, despite the fact that the remaining claims were dismissed without prejudice:

The Supreme Court has squarely held that there is a prevailing party when there has been a material

**8**

**and that *Miles* and *Idea Place* do not bar Defendants' motions for fees, the analysis turns to whether there is a basis to support an award for fees in this case.[11] Citing California Code of Civil Procedure 1033.5(a)(10), which provides that attorney's fees are "allowable as costs [...] when they are authorized by contract, statute, or law," Plaintiff argues the "use" and "indemnity" provisions of the Agreement support their motions for attorney's fees.[12] Defendants are correct. The plain language of the Lease Agreement makes clear that the parties contemplated - and explicitly provided - that a party was entitled to attorney's fees if it prevailed on "any" litigation involving the "use of the**

  alteration of the legal relationship of the parties.
  That is the governing standard, not whether it was
  dismissed based on subject matter jurisdiction or some
  other ground that is a dismissal without prejudice. And
  given the dismissal with prejudice of the second claim
  and the fact that that is a final determination now,
  and then you have the dismissal without prejudice of
  these related CERCLA first and third claims, there has
  been a material alteration of the legal relationship of
  the parties. The federal contribution claim is gone
  and by virtue of the dismissal with prejudice will not
  resurface.

(Reporter's Transcript ("RT"), July 14, 2010, 10:10-10:23.)

[11] Federal Rule 54(d)(2) provides, in relevant part: "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages [...] Unless a statute or a court order provides otherwise, the motion must [] specify the judgment and the statute, rule, or other grounds entitling the movant to the award."

[12] The Lease Agreement's "use" provision provides: "In the event of litigation concerning the terms of this lease or the use of premises, the Court may award to the prevailing party such attorney's fees as it may deem reasonable."

9

premises."    This   interpretation   and   the   significance   of   the

provision's disjunctive language was analyzed during oral argument

on July 14, 2010:

> When a contractual term is in the disjunctive, the
> reading of the plain language would be, in paragraph 7,
> in the event of litigation concerning the terms of this
> lease, the Court may award the prevailing party such
> attorneys fees as it may deem reasonable.  Next, in the
> event of litigation concerning the use of the premises,
> the Court may award the prevailing party such attorneys
> fees as it may deem reasonable.  And when you look at
> the alteration, destruction, operation and liability
> provisions, the lease contemplates that the tenant will
> be responsible for keeping up the premises, keeping
> them safe from harm, and expressly contracts to
> indemnify by the traditional term lessee shall save the
> lessor harmless from all claims, demands, actions and
> suits arising from the use and occupancy of the
> premises.  And certainly the dry cleaning business
> occupied the premises.  It was the use of the solvents
> and the other dry cleaning chemicals that leaked either
> from the operation on the site or through any kind of
> pipes or other conveyance mechanisms that carry the
> cleaning solvent after it was used and the other
> chemicals that the building applied into areas where
> they could come in contact with the soil that underlies
> the business into the groundwater and the substrata
> that exist there.
>
> And so if we read the plain language, I don't think
> that there is any question about what meaning it is
> susceptible to.  This lease simply, as is the purpose
> of every lease, for at least habitable property the
> Court has ever read, the owner of the property is
> giving an interest in the form of a leasehold to
> somebody to occupy and use the premises. And the basis
> of that bargain, receive never seen it otherwise, is
> while you are in possession of our property and this
> legal interest you've been granted in it, take care of
> it.  Keep it safe.  Don't let it be damaged.  Don't use
> it to create liability from third parties that are
> going to get us sued, made the subject of damage claims
> or otherwise harmed.
>
> So I think, in the final analysis, that where I
> certainly understand your arguments, that the language
> is -- it's simple and it's clear.

(RT, July 14, 2010, 32:13-34:1.)

     Here, the Lease Agreement's "use" provision provides a basis

**for Defendants to recover attorneys' fees.  The parties included the "use" language as part of an arms-length transaction, the language is unambiguous, and, as explained above, the underlying litigation involved the "use" of the premises.  Moreover, the Ninth Circuit has held that "the underlying litigation need not necessarily be for breach of contract to trigger the right to a contractual attorney fees recovery if the contractual fee provision is broadly worded."  *See Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937-38 (9th Cir. 1999).[13]  The language of the Lease Agreement satisfies this standard.  The motions for attorneys' fees are GRANTED.**

---

[13] *Lerner v Ward*, 13 Cal. App. 4th 155 (1993), further supports granting the fee requests in this case.  In *Lerner*, Plaintiffs sued defendants for falsely representing that the real property that plaintiffs agreed to purchase could be subdivided.  Although plaintiffs asserted various tort and contract claims, plaintiffs dismissed the contract claims and proceeded against the sellers only on a fraud cause of action.  After the jury returned a verdict in favor of defendants, they unsuccessfully moved for attorney fees.  The trial court denied the motion, concluding that attorney fees are not recoverable in a tort action for fraud arising out of a contract pursuant to Civ. Code, § 1717.

The Court of Appeal reversed and remanded the matter for the trial court to determine defendants' reasonable attorney fees.  The court held that the trial court properly refused to award attorney fees under Civ. Code, § 1717, since a tort action for fraud arising out of a contract is not an action "on a contract" within the meaning of Civ. Code, § 1717.  However, the court held that defendants were entitled to recover reasonable attorney fees as costs, under Code Civ. Proc., § 1021 (attorney fees based on agreement of parties).  The parties' purchase agreement contained a provision for attorney fees to the prevailing party "in any action or proceeding arising out of this agreement," and the court held that this provision for fees was applicable to an action for fraud.  The Lerner court held: "[Recovery of fees is allowed] because the tort cause of action *arose out of the written agreement*.  The Lerners alleged and tried to prove that the Wards, through their fraudulent representations, induced the Lerners to enter into an agreement to purchase the property."

11

**B.** *Calculation of Attorneys' Fees*

Once a determination is made that attorney's fees are appropriate, the standard to be applied in calculating an award of attorney's fees is that of "reasonableness."  Whether under the California state law, or federal law, a determination of reasonableness generally involves a two-step process.  First, the court calculates the "lodestar figure" by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate.  *See, e.g., Ketchum v. Moses*, 24 Cal.4th 1122, 1131-32; *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1095 (2000); *see also McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995).  In determining the lodestar amount, the California Supreme Court has "expressly approved the use of prevailing hourly rates as a basis for the lodestar."  *Ketchum*, 24 Cal.4th at 1132.

Second, the court may adjust the lodestar upward (via fee enhancer or "multiplier") or downward based on an evaluation of certain factors, including, among other things, the time and labor required; the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; and whether the fee is fixed or contingent.  *See id.; cf. Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  Not all factors are always relevant in determining whether an award is reasonable.  The party seeking a fee enhancement bears the burden of proof.  *See Ketchum*, 24 Cal.4th at 1138.

Courts may reduce a requested fee award, or deny one altogether, where a fee request appears unreasonably inflated.  *See id.* at 1137; *see also Hensley v. Eckerhart*, 461 U.S. 424, 434

12

Case 1:08-cv-00526-OWW-SKO   Document 209   Filed 09/07/10   Page 13 of 27

(1980) (court may deny compensation for "hours that are excessive, redundant, or otherwise unnecessary").

Here, Defendant Ichimoto seeks a total of $58,875.86 in attorneys' fees, broken down as follows: a lodestar of $29,232.00 in fees, with a 2.0 multiplier for extraordinary litigation efforts and expertise in the area of environmental law, for a total of $58,464.00.   Defendants William and Cinda Jamison request $15,959.50 in attorneys' fees, no multiplier, based on the lodestar method.

### 1.   *Lodestar - Reasonable Hourly Rate*

Plaintiffs make no specific objection to the hourly rates sought in this case, however, district courts in this Circuit are obliged to scrutinize attorney's fees motions independently to determine reasonableness. *See, e.g., Gales v. Deukmejian*, 987 F.2d 1392, 1400-1401 (9th Cir. 1992).

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11; *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005).   The Ninth Circuit has observed:

> Once the number of hours is set, "the district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir.1986). This determination "is not made by reference to rates actually charged by the prevailing party." Id. The court should use the

prevailing market rate in the community for similar
services of lawyers "of reasonably comparable skill,
experience, and reputation." Id. at 1210-11. Either
current or historical prevailing rates may be used.
Missouri v. Jenkins, 491 U.S. 271 (1984). The use of
current rates may be necessary to adjust for inflation
if the fee amount would otherwise be unreasonable; the
district court must look to the "totality of the
circumstances and the relevant factors, including delay
in payment." Jordan v. Multnomah County, 815 F.2d 1258,
1262 n. 7 (9th Cir.1987).

*D'Emanuelle v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1384 (9th Cir. 1990) overruled on other grounds by *Burlington v. Dague*, 505 U.S. 557 (1992).

The "relevant legal community" in the lodestar calculation is generally the forum in which the district court sits. *Mendenhall v. NTSB*, 213 F.3d 464, 471 (9th Cir. 2000); *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997); *Deukmejian*, 987 F.2d at 1405.

a. <u>*Attorneys Daniel O. Jamison and Kenton Klassen*</u>

Defendant Ichimoto requests an hourly rate of $305/hr for the services of attorney Daniel O. Jamison. Mr. Jamison is a 31-year lawyer and a preferred shareholder at Dowling, Aaron, and Keeler ("Dowling"), the law firm representing Defendant Ichimoto in this case.[14] (Jamison Decl., Doc. 187-2, ¶ 7.) Mr. Jamison practices defense-side civil litigation, specializing in environmental law. (Id. at ¶ 11.)

Defendants William and Cinda Jamison request an hourly rate of $255/hr for the services of attorney Kenton Klassen. Mr.

---

[14] According to his declaration, Mr. Jamison's billing rate increased from $295.00 to $305.00 on January 1, 2009. (Doc. 187-2, at ¶ 7.) Mr. Jamison's fee request includes time billed at both rates.

14

Klassen is a 1986 law graduate, is a partner at Dowling, and is a senior member of the firm's trial department. (Klassen Decl., Doc. 186, ¶ 2.)  According to his declaration, Mr. Klassen has been a "practicing attorney for 23 years, and ha[s] handled numerous litigation matters through trial (both by court and by jury), many of which involved complex factual and legal issues." (Id. at ¶ 8.)

Defendants have shown that the hourly rates it seeks for senior attorneys Mr. Jamison and Mr. Klassen are consistent with the prevailing market rate for similar litigation.  The Court has previously held that $300 is a reasonable local rate for attorneys with defense counsel's experience. *See, e.g., Ruff v. County of Kings*, 700 F. Supp. 2d 1225 (E.D. Cal. 2010).  In addition, Judge Ishii has ruled that hourly rates of $315 and $350 were reasonable for the Eastern District of California, Fresno Division. *See Wells Fargo Bank, Nat. Ass'n v. PACCAR Financial Corp.*, 2009 WL 211386 (E.D. Cal. Jan. 28, 2009); *see also Beauford v. E.W.H. Group Inc.*, 2009 WL 3162249 (E.D. Cal. Sept. 29, 2009).  Based on the absence of any objection from Plaintiffs coupled with recent cases out of the Eastern District of California, Fresno Division, the $305.00 hourly rate for Mr. Jamison and $255.00 hourly rate for Mr. Klassen are reasonable.

### b. *Associates and Paralegals*

Defendants also submit fee requests for the services of a number of associates and paralegals.  They request the following billing rates for these individuals: Christopher A. Brown ($305.00/hr);  Leigh W. Burnside ($275.00/hr);  Paul M. Parvanian ($165 and $185/hr); Sean A. Peterson ($125.00/hr);  Shiloh D. Lee

15

1  ($95.00/hr); Deborah G. Dodd ($115 and $125/hr);  Keli M. Maire

2  ($95.00/hr); and Linda S. Camerer ($115.00/hr).  (Doc. 186, ¶ 8;

3  Doc. 187-2, ¶ 7.)   None of these individuals submitted a

4  declaration verifying their background, experience, or education,

5  however, both Mr. Jamison and Mr. Klassen declare that: "The rates

6  are reasonable and consistent with the billing rates charged by

7  comparable firms, attorneys and paralegals who practice civil and

8  complex civil litigation in the San Joaquin Valley."  (Id.)

9      To inform and assist the court in the exercise of its

10  discretion, the "burden is on the fee applicant to produce

11  satisfactory evidence - in addition to the attorney's own

12  affidavits - that the requested rates are in line with those

13  prevailing in the community[.]"  *Blum*, 465 U.S. at 869 n. 11;

14  *Dang*, 422 F.3d at 814.  Here, moving Defendants have not presented

15  any relevant evidence regarding the prevailing hourly rates charged

16  by associate attorneys or paralegals.   The Supreme Court has

17  expressly stated that "courts properly have required prevailing

18  attorneys to justify the reasonableness of the requested rate or

19  rates."  *Blum*, 465 U.S. at 869 n. 11.  Moving defendants fail to

20  meet this standard.[15]

21      In this context, *Moreno v. City of Sacramento*, 534 F.3d 1106

22  (9th Cir. 2008), a recent Ninth Circuit case involving an

23

---

24      [15] The inadequacy of the evidence is best demonstrated by the
25  lack of support for fees incurred by attorneys Christopher A.
    Brown, Leigh W. Burnside, and Paul M. Parvanian.   There is no
26  indication whether these individuals are admitted to practice law
    in California and, if so, when they were admitted to practice.  Nor
27  is there a brief description of the applicant's educational
    background and/or litigation experience.   In contrast, both Mr.
28  Jamison and Mr. Klasser's declarations include this information.

attorney's fee request under 42 U.S.C. § 1988, is instructive. In *Moreno*, Chief Judge Kozinski made clear that "[w]hen the district court makes its award, it must explain *how it came up with the amount*." *Id*. at 1111 (emphasis added). Judge Kozinski indicated that the "explanation need not be elaborate, but it must comprehensible" and, further, that the "explanation must be concise but clear." *Id*. (citing *Hensley*, 461 U.S. at 437). Here, the documentary evidence concerning the rates and work performed by associates and paralegals is severely underdeveloped and restricts the district court's ability to meet *Moreno*'s exacting standards for fee awards.

With respect to these individuals, the moving defendants have not provided any evidence upon which to determine the prevailing market rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Chalmers*, 796 F.2d at 1210. On a similar lack of supporting evidence, Judge Shubb limited recovery of associates' and paralegals' fees to the rates "favored in this district":

> [D]efendants have not provided any evidence to the court to establish what a reasonable rate is for associate attorneys or paralegals in this community. 'Judges in this district have repeatedly found that [a] reasonable rate[ ] in this district [is] ... $150 for associates.' Eiden, 407 F. Supp. 2d at 1171; see also Belliveau, 2007 WL 1660999, at *4. Additionally, the paralegal rate 'favored in this district' is $75 per hour. Faerfers, 2008 WL 1970325, at *5 (quoting Robinson v. Chand, No. Civ. 2:05-1080 DFL DAD, 2007 WL 1300450, at *2 (E.D. Cal. May 2, 2007)). The court agrees with these conclusions and given that defendants have presented no evidence to the contrary, will limit recovery of associates' fees to a rate of $150 per hour and paralegals' fees to $75 per hour.

*Yeager v. Bowlin*, No. 2:08-102-WBS-JFM, 2010 WL 2303273, at 6 (E.D.

17

1  Cal. June 7, 2010).  This language applies with equal force to this
2  case.

3      Courts in this Circuit require prevailing parties to justify
4  the reasonableness of the requested rate or rates and demonstrate
5  that the requested rates are in line with those prevailing in the
6  community.  If the prevailing party fails to meet this standard,
7  the fee request is reduced or excluded altogether.  *Compare*
8  *Blackwell v. Foley*, --- F. Supp. 2d ----, 2010 WL 2794298 (N.D.
9  Cal. July 15, 2010) (granting prevailing party's request for
10 attorney and paralegal fees after a review of the "detailed
11 declarations," which included educational backgrounds, work
12 experience, and "comparative rate surveys from recent [] fee
13 orders.") *with Beauford v. E.W.H. Group, Inc.*, No.1:09-CV-00666,
14 2009 WL 3162249 at 6 (E.D. Cal. Sept. 29, 2009.) (the moving party
15 "has not met the [] burden of production and all fee requests [for
16 associates and paralegals] are denied.") *and Kochenderfer v.*
17 *Reliance Standard Life Ins. Co.*, No. 06-CV-620-JLS-NLS, 2010 WL
18 1912867, at 3 (S.D. Cal. Apr. 21, 2010) (finding that "[a]lthough
19 Plaintiff submits numerous attorney declarations, those
20 declarations fail to carry Plaintiff's burden.").

21     Applying the reductions made in *Yeager*, the following rates
22 are adopted:    Christopher Brown ($150/hr), Leigh Burnside
23 ($150/hr), Paul Parvanian ($150/hr), Sean Peterson ($75/hr), Shiloh
24 Lee ($75/hr), Deborah Dodd ($75/hr), Keli Maire ($75/hr), and Linda
25 Camerer ($75/hr).

26

27     **2.   *Lodestar - Hours Reasonably Expended***
28     In determining the lodestar figure, a district court should

**18**

exclude from its initial calculation hours that are "excessive, redundant, or otherwise unnecessary," i.e., hours that were not "reasonably expended." *Hensley*, 461 U.S. at 434; *Dang v. Cross*, 422 F.3d 800, 812 n. 12 (9th Cir. 2005); *In re Dawson*, 390 F.3d 1139, 1152 (9th Cir. 2004). The Supreme Court has explained:

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.

*Hensley*, 461 U.S. at 434.

The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. *Id.* at 433, 437; *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994); *Gates v. Deukmejian*, 987 F.2d 1392, 1398-99 (9th Cir. 1992). "Plaintiff's counsel ... is not required to record in great detail how each minute of his time was expended," even "minimal" descriptions that establish that the time was spent on matters on which the district court may award fees is sufficient. *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir.2004). Counsel need only "identify the general subject matter of [their] time expenditures." *Trustees of Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 427 (9th Cir. 2000). The party opposing the fee application has a burden of rebuttal that requires submission of evidence that challenges the accuracy and reasonableness of the hours charged or challenges the facts asserted by the prevailing party. *McGrath v.*

19

*County of Nevada*, 67 F.3d 248, 255-256 (9th Cir. 1995); *Gates v. Gomez*, 60 F.3d 525, 534-35 (9th Cir. 1995); *Deukmejian*, 987 F.2d at 1398-99.

With respect to attorneys Jamison and Klasser, the submitted evidence is detailed and helpful in determining the total number of hours worked.  Defendants' motions submit that a total of 35.8 hours (Jamison) and 59.1 hours (Klassen) were reasonably expended in litigation of this case.  Included with Jamison and Klassen's declarations are detailed billing statements outlining the tasks performed. (Doc. 186, Ex. A; Doc. 187-2, Ex. A.)  The work in this case was related primarily to reviewing court filings, drafting and reviewing discovery responses, submitting Rule 26 disclosures, researching joint defense issues, drafting a cross-complaint, analyzing existing insurance policies, and seeking insurance coverage for individual defendants.  Defendants' counsel also worked on joinder filings, possible litigation against third parties, and the instant motion for attorneys' fees.

A graphical representation the baseline lodestar amount believed by defendants to be reasonable is as follows:[16]

### a.   *Defendant Ichimoto*

| NAME | HOURS | HOURLY RATE | LODESTAR AMT |
|------|-------|-------------|--------------|
| Jamison | 35.8 | $305 | $10,713.00 |
| Associate(s) | 39.3 | $150 | $5,895.00 |
| Paralegal(s) | 76.3 | $75 | $5,722.50 |

---

[16] These amounts do not reflect the fees incurred in drafting the motions for attorneys' fees, which is discussed in § III(D), *infra*.

| TOTAL | 151.4 | | $22,330.00 |
|---|---|---|---|

### b.   *Defendants William and Cinda Jamison*

| NAME | HOURS | HOURLY RATE | LODESTAR AMT |
|---|---|---|---|
| Klasser | 59.1 | $255 | $15,070.50 |
| Associate(s) | 3.0 | $150 | $450.00 |
| Paralegal(s) | 3.0 | $75 | $225.00 |
| TOTAL | 65.1 | | $15,745.50 |

Plaintiffs express serious concern about the fact that Defendants collectively request over $70,000 in attorneys' fees, despite not filing a motion or drafting/responding to substantial discovery.  Plaintiffs argue that Defendants are not entitled to a full fee award because they "do not articulate or substantiate how all of the fees currently sought contributed to the outcome in this matter."  Specifically, Plaintiffs argue that Defendants simply joined the "significant procedures" in this case, i.e., the motion to dismiss and motion for judgment on the pleadings filed on March 1, 2009 and January 25, 2010.

Here, the amount of the fees charged by counsel would no doubt be lower if they only charged for the time expended drafting a responsive pleading and the operative "joinders." However, because the time incurred researching potential insurance coverage options/carriers and reviewing related court dockets are related to the Plaintiffs' original environmental claims, it is not possible to simply exclude these amounts from the lodestar calculation.

21

1   **Rather, a modest downward adjustment of the lodestar is warranted.**
2   ***See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 ("[T]he**
3   **district court can impose a small reduction, no greater than 10**
4   **percent – a 'haircut' – based on its exercise of discretion and**
5   **without a more specific explanation.").   Based on the Court's**
6   **familiarity with this action, the lack of significant involvement**
7   **by the moving Defendants, the sheer amount of the fee request given**
8   **the moving Defendants' limited role and success in this case, and**
9   **after reviewing all of the time entries in detail, a reduction of**
10  **ten percent is appropriate.[17]**

11  **To support a complete recovery of fees, Defendants cite *Marsu,***
12  ***B.V. v. Walt Disney Co.*, 185 F.3d at 937-38.   In *Marsu*, the Ninth**
13  **Circuit held that "a court may award attorneys' fees for claims**
14  **upon which the plaintiff failed to prevail but were related to the**
15  **plaintiff's successful claims."   While *Marsu*'s reasoning remains**
16  **instructive - it is cited in § III(A) of this opinion - it does not**
17  **preempt or undermine the Ninth Circuit's holding in *Moreno*.   The**

18  _____

19  [17]   There are three additional grounds supporting the ten
20  percent reduction of the fee award in this case. One, as discussed
    during oral argument on June 14, 2010, only Plaintiffs' second
21  claim was dismissed with prejudice.   The remaining claims were
    dismissed without prejudice and can be re-filed in state court. As
22  such, it can be argued that Defendants obtained "limited success,"
    which provides basis for a "haircut" or reduction in the fee award.
23  *See Caplan v. CNA Financial Corp.*, 573 F. Supp. 2d 1244, 1251 (N.D.
    Cal. 2008) (finding that "eight percent reduction in the amount of
24  fees sought is appropriate under the circumstances [which included
    limited success."].   Second, the majority of attorneys' fees were
25  incurred after Plaintiffs' second cause of action was dismissed
26  with prejudice on September 16, 2009, i.e., the "significant
    procedure."    Three, paragraph seven of the Lease Agreement
27  provides: "In the event of litigation concerning the terms of this
    lease or the use of the premises, the Court may award to the
28  prevailing party such attorney's fees as it may deem reasonable."

two decisions are compatible.  A review of the declarations shows that a majority of the "billed time" was spent researching insurance policies/features, communicating with clients and co-counsel, and reviewing pleadings filed in state court (by third parties).  It is undisputed that moving Defendants did not file a dispositive motion in this case.   The "haircut" reflects a discretionary judgment based on "reasonableness."[18]  *See Avila v. Olivera Egg Ranch, LLC*, No. 2:08-cv-02488 JAM KJN 2010 WL 1404397, at 6 (E.D. Cal. Apr. 6, 2010) (imposing a ten percent haircut on fees based on the "inefficiencies in th[e] method of staffing" and the fact that "the environmental litigation is proceeding against a single defendant, and any extraordinary complexity necessitating the affiliation of eight attorneys in a single action is not readily apparent."); *see also Caplan v. CNA Financial Corp.*, 573 F. Supp. 2d 1244, 1251 (N.D. Cal. 2008) (reducing the lodestar by eight percent based on "the Court's familiarity with this action and the relationship between Plaintiff's claim for benefits and his claim for breach of fiduciary duty.").

Reducing the fee awards by ten percent, moving Defendants are awarded $20,097.00 (Ichimoto) and $14,170.95 (William and Cinda Jamison).  Defendants William and Cinda Jamison's award is further

---

[18] In determining a proper lodestar amount, "[a] district court thus awards only the fee that it deems reasonable." *Moreno*, 534 F.3d at 1111.  "The district court is in the best position to determine in the first instance the number of hours reasonably expended in furtherance of the successful aspects of a litigation and the amount which would reasonably compensate the attorney." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1211 (9th Cir. 1986).

1  reduced by $76.50, for a total of $14,094.45.[19]

### 3.  Multiplier

Defendant Ichimoto seeks a multiplier of 2.0 on the lodestar. Plaintiffs contend that a multiplier is necessary to a determination of a reasonable fee because the case involved "a massive environmental tort," including allegations "of pollution dating back to 1970 or before in elevated, rocky, sloping areas, and claiming to affect at least one water well for consumption." Defendants William and Cinda Jamison do not request a multiplier.

Plaintiffs oppose Defendant Ichimoto's multiplier request on grounds that "there is no factual basis to multiply the attorney fees due" and the moving parties "do not articulate or substantiate how all the fees currently sought contributed to the outcome in this matter, or how any particular expertise of the attorneys involved availed their clients."

After making the lodestar computation, Courts sometimes assess whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of several factors. *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir.2006). Those factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time

[19] Defendants William and Cinda Jamison request fees for work performed by an employee identified only as "SDS." However, an individual with those initials is not identified in Mr. Klassen's declaration or the moving papers. The .3 hours billed ($76.50) by "SDS" are excluded from the attorneys' fee calculation.

1
2
3
4

> **limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.**

5 *Id*. at 746.

6   Generally, however, most of these factors are considered in
7 the initial lodestar calculation and do not merit either an upward
8 or downward departure of the lodestar amount. *See, e.g., Sullivan*
9 *v. Sullivan,* No.CV-09-545-S-BLW, 2010 WL 1651994, at 2 (D. Idaho
10 Apr. 21,2010).  That is the case here.

11   Under California and federal law, the court may use its
12 discretion to increase an attorneys' fees award by granting a
13 multiplier in especially risky, complex, and undesirable litigation
14 in which the attorney has obtained good results. *See Guam Soc'y of*
15 *Obstetricians and Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir.
16 1996).  Application of a multiplier is completely within the
17 Court's discretion. *Id*.

18   Although counsel obtained - pursuant to a joinder - a
19 dismissal with prejudice, this litigation was not unusually complex
20 or risky, nor were there "exceptional circumstances." *See Vasquez*
21 *v. Cargill, Inc.*, No.06-00008-CJC-RNB, 2008 WL 7825955, at 6 (C.D.
22 Cal Mar. 13, 2008) ("The Court declines to apply any multiplier to
23 the lodestar amount here [] [Counsel] litigated this ERISA case
24 admirably, but it was no more risky or complex than any ERISA
25 proceeding.").  A multiplier is not "necessary to the determination
26 of a reasonable fee." *Ada*, 100 F.3d at 697.  Defendant Ichimoto's
27 request for application of a 2.0 multiplier is DENIED.

28

**4.** *Hours Expended in Drafting Fee Motions ("Fees-on-Fees")*

Defendants William and Cinda Jamison state that 7.4 hours were expended by attorney Klassen in connection with preparing this fee petition, at a rate of $255.00, for a total of $1,785.00.  (Doc. 186, ¶ 9.)

According to Defendant Ichimoto, the "work in progress billing records reveal [] attorneys fees charges [] in the approximate amount of $3,132.00." (Doc. 187-2, ¶ 5.)  No further information is provided, i.e., the billing attorney/paralegal is not identified.  As such, to determine the lodestar calculation, the Court multiplies Mr. Klassen's hours billed (7.4) by Mr. Jamison's hourly rate ($305), for a total of $2,257.00.

The Ninth Circuit has approved arithmetic reduction of an award of "fees-on-fees" by the ratio of the fees actually awarded in the underlying fee dispute to the amount therein requested. *See, e.g., Thompson v. Gomez*, 45 F.3d 1365, 1366-1368 (9th Cir. 1995).  There is no reason to deviate from that procedure in this case. Accordingly, the lodestar figure for fees-on-fees is reduced by the ratio of the lodestar figure calculated for merits litigation fees to the amount of fees requested in the moving Defendants' fee petition.

Here, Defendant Ichimoto requested $29,232.00 in total compensation for attorney and paralegal fees in connection with litigating the merits of this action, whereas the lodestar calculation yields an appropriate award of $20,097.00, or approximately 69% of the amount requested.  Applying this ratio to the instant request, the lodestar for fees-on-fees is reduced to $1,557.33.

26

1  **Defendants William and Cinda Jamison requested $15,959.50 in**
2  **total compensation for attorney and paralegal fees in connection**
3  **with litigating the merits of this action, whereas the lodestar**
4  **calculation yields an appropriate award of $14,170.95, or**
5  **approximately 89% of the amount requested.  Applying this ratio to**
6  **the instant request, the lodestar for fees-on-fees is reduced to**
7  **$1,588.65.**

8  **No further fees will be awarded.**

9

10  **IV.  CONCLUSION.**

11  **For the reasons discussed above:**

12

13  **1.  Defendants Sakaye Ichimoto's and William and Cinda**
14  **Jamison's motions for attorneys' fees are GRANTED.**

15

16  **2.  Defendant Ichimoto is awarded $20,097.00 in attorneys'**
17  **fees and $1,557.33 for "fees-on-fees," resulting in a**
18  **total award of $21,674.33.**

19

20  **3.  Defendants William and Cinda Jamison are awarded**
21  **$14,170.95 in attorneys' fees and $1,588.65 for "fees-on-**
22  **fees," resulting in a total award of $15,759.60.**

23

24  IT IS SO ORDERED.

25  **Dated:   September 7, 2010**          **/s/ Oliver W. Wanger**
26                                UNITED STATES DISTRICT JUDGE

27

28

27